Reed, P. J.,
dissenting.
I cannot concur in the majority opinion of this court. A proper respect for my associates requires me to give the reasons and grounds of dissent, which I will do as briefly as I can. The mere notation of a dissent at the end of an opinion conveys nothing to the bar or associates upon the bench. Without the reasons, it may be regarded as caprice.
A brief review of the facts becomes necessary: Appellant was engaged in manufacturing and selling beer; appellee, a wholesale and retail liquor dealer. Both were anxious to extend their business and sell their goods. Appellee testified: That on September 2, 1890, he bought a saloon for $1,000, went to appellant’s manager, and asked him to advance the money ($1,000), and take a chattel mortgage on the property from the party to whom he should sell, to which the manager agreed, and gave a check for the amount, required a note for the money, and received the following:
“ Denver, September 2, 1890.
“ On demand, I promise to pay to the order of The Denver Brewing Company one thousand 00/100 dollars.
[Signed] “ Samuel Barets.”
A week or ten days later, appellee sold the saloon for $1,500, —$500 in cash, which he retained; and the purchaser executed a note and chattel mortgage to appellant for the other $1,000. “Rinderman [purchaser] kept the saloon going for some little time, and then kind of busted up, and at that time he owed me about three or four hundred dollars for liquors *347 furnished. * * * I had to take hold of the saloon then again.” Sent one of his men to run it. A week or two after, sold it to another party, whom he informed that he (appellee) had $600 against the saloon, and appellant had a chattel mortgage of $1,000, which the purchaser must assume. That he went to the appellant and assumed the mortgage. “ Barets [purchaser] told me he could do better, and wanted me to take the place off his hands, and I took it off his hands. Then I sold the equity of my interest in that saloon. Traded it off for the equity in a little house on the north side.” “ A. The arrangements were simply this: I asked Mr. Seimon to advance $1,000 in order to purchase this place, and that he, in payment of that,—in settlement of that $1,000— would take a chattel mortgage on that saloon. Mr. Seimon told me that he would, and went and got me a check for $1,000; and, says he, ‘I wish you would give me a duebill in the meantime,’ which I did. Q. What was to become of your duebill when the chattel mortgage was given ? A. It was to be returned. Q. Was it returned? A. I asked Mr. Seimon for the note two or three times, and he said he could not give it up at once.” “A day or two before this suit was brought, Seimon come in and said, ‘ Sam, you want to see me ? ’ ‘ Yes,’ I saj^s, ‘ I want that note. I have asked you several times for it,—two or three times. If I do not get it back, I will sue for it.’ Mr. Seimon-says, ‘When you pay me $1,000, you can have the note back.’ * * * I says, ‘I don’t owe you $1,000.’ * * * And the next morning two deputies walked in.”
The facts clearly established by the evidence of appellee, regardless of others, are: First, that appellee obtained from appellant $1,000, the entire purchase price of the property, and gave his note for the amount; second, that he sold the property for $1,500, retained the cash payment, and had the purchaser execute a note and chattel mortgage for $1,000 to appellant; third, that he took title in his own name, was the owner, dealt with it, occupied it himself, and, while the money for the original purchase remained unpaid, traded and sold *348 what he called his “ equity ” for other property; fourth, that his own note remained unpaid in appellant’s hands during all the time he was manipulating the property.
The suit was brought February 17, 1893. His note to appellant for the money was given September 2, 1890. The Binderman note and chattel mortgage, which it was claimed was substituted for, and was payment of, his, -was executed September 19, 1890, and for nearly two and one half years his note remained in the hands of the payee, and no demand was shown to have been made until about the time suit was brought. If it was paid, it was paid on the 19th of September, 1890, and should have been demanded at that time.
The established facts show that the appellant regarded the appellee as the debtor, and the note and mortgage of the purchaser as collateral security for the purchase money; and the conduct of appellee was such as to warrant that supposition. There was no claim that appellant had been paid in full, except by the substitution, which could not be established except by direct proof, which was wanting; otherwise the promissory note remaining in the hands of the payee could not be impeached. The circumstances attending the entire transaction were such as to sustain the validity of the note and liability of appellee. There was no claim of payment, except by the supposed substitution; and the fact that appellee retained the title and use for the length of time that he did, and then sold what he called his “ equity,” impairing the security, was such that nothing but the most positive proof could have established the defense. The only question was in regard to the character of the transaction. Defendant gave his version, which was entirely at variance with the circumstances. What the contract was, was the only question to be determined.
Seimon, the manager of appellant, the other contracting party, was placed upon the stand, and the following question asked: “Q. I will ask just one question, Mr. Seimon. State whether or not the note and mortgage of Christ Rinderman were ever received by The Denver Brewing Com *349 pany as a payment in full, or otherwise, of the note of Sam. Barets. (Objected to as irrelevant, immaterial, and not cross-examination. Objection sustained. Plaintiff excepts.)”
This action of the court was gross error, for which the judgment should be reversed. Defendant had fully testified in regard to his defense, and it was immaterial whether it occurred upon cross-examination or otherwise. It was rebuttal, and his evidence of what the contract was should have been received. The ruling of the court was such as to prevent all the opposing evidence in regard to the contract. The judgment should have been reversed, and cause remanded for a new trial. The evidence of appellee, confronted with the attending facts, was not sufficient to warrant the judgment, and it is inequitable and unjust.